UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENDA WILLIAMS AUSTIN AND                      CIVIL ACTION
CLAUDE AUSTIN, JR.

VERSUS                                                     NO. 16-8726

BANK OF AMERICA, N.A.                              SECTION "R" (2)


## ORDER AND REASONS

Before the Court is Defendant Bank of America, N.A.'s unopposed motion to dismiss *pro se* plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, the Court GRANTS defendant's motion.


## I.    BACKGROUND

This lawsuit arises out of an executory process foreclosure action initiated by Bank of America against Glenda Austin, individually and in her capacity as the surviving spouse of Claude Austin, Sr., in Louisiana state court.[1]   In January, 1998, the Austins purchased property in Houma, Louisiana.[2]  On October 18, 2006, the Austins executed a promissory note in

---

[1]      R. Doc. 8 at 1.
[2]      R. Doc. 8-1 at 2.

the principal amount of $94,395 in favor of GMFS, LLC.[3]  The note was secured by a mortgage on the Austins' property.[4]  GMFS endorsed the note to Countrywide Bank, N.A., and Countrywide ultimately endorsed the note to Bank of America.[5]   On September 2, 2011, Mortgage Electronic Registration Systems, Inc. (MERS) assigned the mortgage to Bank of America.[6]   On August 30, 2013, Glenda Austin entered into a Loan Modification Agreement with Bank of America, whereby the parties agreed to amend and modify the terms of the note.[7]

On November 6, 2015, after Glenda Austin and Claude Austin, Sr. defaulted on the note and mortgage, Bank of America filed a Petition for Executory Process in Louisiana state court.[8]  The state court executed an Order of Executory Process directing the Terrebonne Parish Sheriff to seize and sell the property.[9]  Glenda Austin did not appeal this order.  The sale was held on March 16, 2016, and Bank of America successfully bid on and purchased the property for $102,240.[10]

---

[3]      R. Doc. 8-3 at 12.
[4]      R. Doc. 8-1 at 3.
[5]      *Id.*; R. Doc. 8-3 at 15.
[6]      R. Doc. 8-6 at 10.
[7]      R. Doc. 8-1 at 3.
[8]      R. Doc. 8-3.
[9]      R. Doc. 8-1 at 4.
[10]     *Id.*

Before the sale occurred, on February 25, 2016, Glenda Austin sought an injunction and restraining order in the state court foreclosure action.[11] The state court did not hold a hearing on the injunction petition until May 16, 2016, two months after the property had been sold.[12]  As the property had already been sold, the state court dismissed the injunction petition as moot.[13]

On June 7, 2016, plaintiffs filed this lawsuit.  In their complaint, plaintiffs allege that Bank of America wrongfully foreclosed on their property because the chain of title from GMFS to Bank of America is "corrupted."[14] More specifically, plaintiffs claim that the assignment of the mortgage from MERS to Bank of America is fraudulent because MERS is no longer in existence and "robo-signed" the assignment.[15]  Plaintiffs also allege that under the Truth in Lending Act (TILA), they are entitled to rescind the Mortgage Loan because the original lender, GMFS, allegedly failed to provide the Austins with the required disclosures under TILA and its regulations.[16] Additionally, plaintiffs allege that they are entitled to rescission because GMFS did not sign the actual note and mortgage.[17]  Finally, plaintiffs appear

---

[11]     R. Doc. 8-7.
[12]     R. Doc. 8-1 at 4.
[13]     R. Doc. 8-8 at 2.
[14]     R. Doc. 1 at 1 ¶ A.
[15]     *Id.*
[16]     *Id.* at 2 ¶ C.
[17]     *Id.* at 3 ¶ D.

to claim that Bank of America made plaintiffs a "third-party contractee" to an unspecified Pooling and Servicing Agreement, and that plaintiffs have an interest in the funds generated under the agreement.[18]   Plaintiffs seek $2,000,000 in damages, or in the alternative, ask this Court to order Bank of America to quitclaim the foreclosed property back to plaintiffs.[19]

On July 25, 2016, Bank of America filed this 12(b)(1) and 12(b)(6) motion to dismiss.[20]   Bank of America argues that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, that plaintiffs' claims are barred by res judicata, and even if not precluded, the claims fail as a matter of law.[21]   Plaintiffs have not responded to Bank of America's motion.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Bank of America argues that the Court cannot hear plaintiffs' claims under the *Rooker-Feldman* doctrine, which limits the Court's subject matter jurisdiction.   *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

---

[18]   *Id.* at 2 ¶ B.
[19]   *Id.* at 3-4 ¶ F.
[20]   R. Doc. 8.
[21]   *Id.* at 2.

4

280, 291 (2005) (*Rooker-Feldman* doctrine implicates subject matter jurisdiction). Fed. R. Civ. P. 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under that rule allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996*); see also Lopez v. City of Dallas*, No. 03-2223, 2006 WL 1450420, at *2 (N.D. Tex. May 24, 2006).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro*, 74 F.3d at 659. When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Accordingly, the Court may

5

consider matters outside the pleadings, such as testimony and affidavits.  *See Garcia*, 104 F.3d at 1261.  A court's dismissal of a case for lack of subject-matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### B.    Rule 12(b)(6)

Bank of America also moves to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when a plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiffs.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

In deciding a motion to dismiss for failure to state a claim, a court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion to dismiss that are referred to in plaintiffs' complaint and are central to their claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Thus, the Court will consider documents attached to the motion to dismiss that are central to the state court foreclosure proceeding.

## III.  DISCUSSION

### A.  *Rooker-Feldman* Doctrine

Bank of America contends that by challenging the foreclosure and sale of their property, plaintiffs are asking this Court to invalidate a state court judgment.  Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to hear collateral attacks on state court judgments.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, 482 (1983).  In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court clarified that the *Rooker-Feldman* doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.  In such cases, federal courts lack subject matter jurisdiction.

This doctrine is not limited to review of claims actually raised in state court proceedings.  "If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review." *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (quoting *Feldman*, 460 U.S. at

482 n.16). On the other hand, the *Rooker-Feldman* doctrine does not preclude a district court's jurisdiction over a plaintiff's "independent claim," even "one that denies a legal conclusion that a state court has reached." *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

In support of its argument, Bank of America has submitted its Petition for Executory Process[22] and the Louisiana state court order commanding the Sheriff of Terrebonne Parish to seize and sell the plaintiffs' property.[23] There is nothing in the record indicating that the plaintiffs appealed the state court order, and it appears that the state court litigation has ended. Therefore, the state court judgment is a final order that cannot be appealed to this Court under the *Rooker-Feldman* doctrine. *See Exxon Mobil*, 544 U.S. at 291 (*Rooker-Feldman* doctrine applies when "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment"); *see also Carter v. Deutche Bank Nat. Trust Co.*, 2010 WL 3074323, at *2 (E.D. La. Aug. 2, 2010) (applying *Rooker-Feldman* doctrine to state court order to issue writ of seizure and sale).

---

[22]   R. Doc. 8-3.
[23]   R. Doc. 8-4.

In their complaint, plaintiffs specifically ask this Court to order Bank of America to quitclaim the foreclosed property back to the plaintiffs. This requested relief, which "immediately signal[s] a *Rooker-Feldman* problem," would be a clear attack on the state court's order. *Cano v. Deutsche Bank Nat. Trust Co.*, No. 12-2328, 2013 WL 3930087, at *4 (E.D. La. July 29, 2013) (citing *Morris v. Am. Home Mortg. Servicing, Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011)). This Court cannot review the state court judgment, nor does this Court have jurisdiction over plaintiffs' claims that are inextricably intertwined with that judgment. Therefore, as the Court lacks jurisdiction over plaintiffs' claims related to the state court judgment, these claims must be dismissed.[24]

## B.    Plaintiffs' TILA Claims

In addition to their claims that the state foreclosure action was invalid, plaintiffs assert that GMFS, the initial lender, violated the Truth in Lending Act by allegedly failing to provide the Austins with the required disclosures under TILA and its regulations. Because of this failure, plaintiffs assert that they have the right to rescind the initial loan. Bank of America responds that

---

[24]    Because the Court lacks jurisdiction over these claims, the Court will not address Bank of America's arguments that these claims are also barred by res judicata, or that they fail as a matter of law because the foreclosure was valid under Louisiana law.

to the extent that plaintiffs seek to rescind the initial loan, these claims are time-barred under TILA.

Under TILA and its implementing regulation, Regulation Z, the creditor must disclose, among other things, the amount financed, the annual percentage rate, the payment schedule, total payment, and total sale price. *See* 12 C.F.R. § 226.18. Additionally, the creditor must disclose the consumer's right to rescind the transaction up to three business days after either the consummation of the transaction, the delivery of a notice of the right to rescind, or delivery of all material disclosures, whichever occurs last. 15 U.S.C. § 1635(a). These disclosures must be made clearly and conspicuously. 15 U.S.C. § 1632(a). If the creditor does not disclose to the consumer the right to rescind or other material disclosures, the right to rescind lasts up to three years after the consummation of the transaction. *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 527 (E.D. La. 2009) (citing 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3)). A plaintiff need not actually file suit within three years to exercise his or her right of rescission, he or she merely has to notify the creditor in writing of his or her intent to rescind. *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015).

Here, the initial loan was executed on October 18, 2006.[25]  Therefore, regardless of what disclosures were or were not made to the Austins concerning that loan,[26] the right to rescind expired on October 18, 2009. Plaintiffs filed this lawsuit on June 7, 2016, well after their right to rescind expired, and they have not alleged that they sent notice to Bank of America or any of its predecessors in interest to notify them of plaintiffs' intention to rescind the loan within three years of the loan's execution.  Plaintiffs also have not made any argument as to why equitable tolling should suspend the limitations period.  *See Melancon v. Countrywide Bank*, No. 10-1723, 2011 WL 692051, at *5 (E.D. La. February 18, 2011).  Therefore, plaintiffs' rescission claim is barred by the statute of limitations.  *Id*.

Plaintiffs also appear to be claiming damages under TILA.  Unlike rescission claims under the TILA, damages claims under TILA have a one-year limitations period.  15 U.S.C. § 1640(e).  This claim therefore expired, at the latest, on October 18, 2007, and is also barred by the statute of limitations.  *See Melancon*, 2011 WL 692051, at *5.

---

[25]    R Doc. 8-3 at 12.
[26]    The record is unclear as to whether the initial lender complied with the TILA disclosure requirements.

Furthermore, to the extent that plaintiffs' TILA claims are not based on the initial loan but on the 2013 Loan Modification Agreement,[27] the modification did not give rise to new disclosure requirements or a new rescission right.  Though loan modifications with a different creditor, rather than the original creditor, can create a new right of rescission and disclosure requirements, this will occur only if the modification satisfies the existing obligation completely and replaces it with a new modification.  *See* 12 C.F.R. § 226.20(a); Official Staff Interpretation, Supp. I to 12 C.F.R. § 226.20(a), ¶ 1.  Modifications of existing obligations do not constitute a creation of a new obligation that would give rise to a new rescission right or disclosure requirements.  *Id.*; *see also Castrillo*, 670 F. Supp. 2d. at 527-28.  The 2013 modification did not replace the existing obligation with a new one, it merely modified the existing obligation by amending the initial promissory note.[28]  Therefore, plaintiffs do not have a cause of action under TILA for the 2013 Loan Modification Agreement.

## C.    Plaintiffs' Remaining Claims

Plaintiffs' remaining claims are meritless and can be summarily dismissed.  Plaintiffs' argument that the note and mortgage are invalid

---

[27]    R. Doc. 8-6 at 12.

[28]    *Id.*

13

because they were not signed by GMFS and MERS, respectively, fails as a matter of Louisiana law.  The Louisiana Uniform Commercial Code governs promissory notes.  Under the Louisiana UCC, promissory notes do not need to be signed by the lender to be valid and enforceable. La. Stat. Ann. §10:3-104(a).  Similarly, the Louisiana Civil Code requires that only the mortgagor sign a mortgage for it to be valid and enforceable; the mortgagee is not required to sign.  La. Civ. Code arts. 3288-89; *see also Butler v. Quicken Loans Inc.*, No. 15-6799, 2016 WL 1383620, at *3-4 (that mortgagee did not sign mortgage does not invalidate mortgage under Louisiana law).  Therefore, the lack of a signature by GMFS or MERS, or a "robo-signed" signature, has no bearing on the validity and enforceability of the note or mortgage.

Additionally, plaintiffs' claim that the mortgage is invalid because neither GMFS nor Bank of America actually loaned plaintiffs money appears to be based on the frivolous "vapor money" theory.  This theory has been rejected consistently by federal courts across the country, including this Court, and any claim based on this theory is meritless.  *Richardson v. Deutsche Bank Trust Co. Ams.*, No. 08-10857, 2008 WL 5225824, at *7 (M.D. Pa. Dec. 12, 2008) (collecting cases); *Jackson v. Bank of America, N.A.*, No. 13-5795, 2013 WL 6185037, at *3 (E.D. La. Nov. 26, 2013).

14

Finally, plaintiffs appear to claim that the securitization of the mortgage in the form of a pooling and servicing agreement (PSA) invalidates the mortgage or gives plaintiffs an interest in the PSA's proceeds, or both.[29] Plaintiffs have pointed to no provision in either the note or the mortgage that prohibits securitization.  Moreover, even if the alleged PSA exists, plaintiffs have not have shown that it is plausible that they are a party to the PSA or an identified third-party beneficiary.  Thus, any claims asserted by plaintiffs arising from the PSA are too speculative to state a claim for which relief can be granted.  *See, e.g.*, *Sigaran v. U.S. Bank Nat. Ass'n*, 560 F. App'x 410, 413-14 (5th Cir. 2014); *Joseph v. Hospital Service Dist. No. 2. of Parish of St. Mary*, 939 So. 2d 1206, 1212-14 (La. 2006).

## IV.   CONCLUSION

For the foregoing reasons, Bank of America's motion to dismiss is GRANTED.  Plaintiffs' claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this ___16th___ day of November, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[29]    R. Doc. 1 at 2 ¶ B.

15